UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:19-cr-33-PPS |
| v. | ) | |
| | ) | |
| | ) | |
| STEFFON GONZALEZ | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, Thomas L. Kirsch II, United States Attorney for the Northern District of Indiana, and Assistant U.S. Attorney Alexandra McTague, submits the following memorandum in aid of sentencing.

**I.  Introduction**

The defendant was charged by way of indictment with two counts of making threats against the President of the United States, in violation of 18 U.S.C. § 871 (Counts 1 and 2), and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1) (Count 3). Pursuant to a written plea agreement, the defendant pleaded guilty to counts 1 and 3, and the government has agreed to dismiss count two at sentencing. The government has also agreed to recommend a sentence at the low end of the guideline range, which is 30 months' imprisonment.

**II.  Guideline Calculation, Restitution, Fine**

    **A.  The Government's Calculation**

The government agrees with the guideline calculation in the Final PSR, which is as follows:

**Count 1: Violation of 18 U.S.C. § 871 (Threat to kill the President)**

| | |
|---|---|
| Base Offense Level under 2A6.1: | +12 |
| Specific Offense Characteristics (2A6.1(b)) | none |
| Official Victim (3A1.2(b))[1] | +6 |
| Obstruction (3C1.1) | +2 |
| **Count 1 Offense Level Total:** | **20** |

**Count 3: Violation of 18 U.S.C. § 1512(c) (Obstruction of Justice)**

| | |
|---|---|
| Base Offense Level under 2J1.2(a): | +14 |
| Specific Offense Characteristic (2J1.2(b)(3)(B) | +2 |
| **Count 3 Offense Level Total:** | **16** |

**Grouping Under 3D1.2(c):**

| | |
|---|---|
| Count 1 Offense Level (Count 1 > Count 3) | 20 |
| Acceptance of responsibility: | -3 |
| **Final Offense Level:** | **17** |

The defendant has a Criminal History Category of III, which makes his guideline range **30-37 months.** No restitution owed in this case. The defendant has limited education, limited work experience, no assets, and owes child support, making a fine likely too burdensome.

### B.   The Defense's Calculation

The defense applied the four-level decrease of specific offense characteristic of 2A6.1(b)(6), on the ground that the offense is "a single instance evidencing little or no deliberation," resulting in an offense level of 13, for a guideline range of 18-24 months.

### D.   The Four-Level Reduction of 2A6.1(b)(6) Does Not Apply

The guideline of 2A6.1 covers a broad range of conduct, and is designed to distinguish between the seriousness of the threats at issue. Under the current guidelines, if the offense involved more than two threats, there is an increase of two levels (U.S.S.G. 2A6.1(A)(2)), if the

---

[1] Application note 5 to 3A1.2 provides for an upward departure if the victim was the President or the Vice President, "due to the potential disruption of the governmental function."

2

offense involved "substantially more than two threatening communications to the same victim," an upward departure may be warranted (note 4(B)), and if there is a single threat evidencing little or no deliberation, there is a reduction of four points (2A6.1(b)(6)). In determining the applicability of subsections (b)(1)-(3) the court is to consider conduct during the offense and any conduct occurring before the offense that is substantially and directly connected to the offense, under the facts as a whole. U.S.S.G. § 2A6.1 n.1.

Gonzalez is charged in this case with making two threats in violation of 18 U.S.C. § 871. Those two threats constitute more than a single instance, and also reflect deliberation.

### 1. *Gonzalez's conduct constitutes more than a "single instance"*

Whether conduct constitutes a "single instance" is a fact-intensive analysis. The Ninth Circuit held that under a prior version of the guidelines, a single instance could include several threats in a short period of time if they constituted a single purpose or scheme. *United States v. Sanders*, 41 F.3d 480 (9th Cir. 1994).[2] The Seventh Circuit conceded in *dicta* that it is possible that repeating a threat to the same person in a short period of time could qualify as a "single instance" but found the inquiry unnecessary because in that case the defendant had made three threatening communications as defined in 2A6.1(b)(2). *See United States v. Frazer*, 391 F.3d 866, 870-71 (7th Cir. 2004). Other Circuits have similarly analyzed the facts as a whole to determine the applicability of 2A6.1(b)(6). *Compare United States v. Russell*, 322 Fed. Appx. 920 (11th Cir. 2009) (finding repetition of the same threat to kill the President to the 911 operator, the responding officer, and in an interview with U.S. Secret Service constituted a single episode) *with United States v. Freeman*, 176 F. 3d 575, 579 (1st Cir. 1999) (finding no single

---

[2] A subsequent unpublished 9th Circuit opinion found that the *Sanders* decision was inapposite because it was decided before the Guidelines were amended to make available a two-level enhancement for multiple threats. *United States v. Anderson*, 474 Fed. Appx 672 (9th Cir. July 23, 2012).

3

instance where eight calls were made over two days threatening to assault and eventually kill a girl); *United States v. Humphreys*, 352 F.3d 1175, 1176 (8th Cir. 2003) (repetition of threat to set president on fire in internet chat room, via fax to the White House, and in person to three people, not single instance).

Here, Gonzalez's actions do not constitute a "single instance." He did not repeat the exact same threat, as was done in *Frazer* and *Russell*. He did not make the same threat twice in short succession to the same person, as was done in the phone calls of *Frazer*. Nor he did not repeat the threat as part of the investigation, as was done in *Russell*. Rather, he made two separate and public threats: (1) that he was standing outside with a .22 long rifle; and (2) that he was outside with a 30 aught 6. Those two separate threats were posted broadly to the Fox32 Chicago Facebook page during the President's rally, as numerous people unknown to Gonzalez watched the rally via Facebook, read the comments, and posted their own comments. The conduct reflects two incidents, not a single instance.[3]

### 2. *Gonzalez's conduct shows deliberation*

There are varying levels of deliberation by an offender in making a threat. The specific offense characteristics in the guidelines provide bookends for the amount of deliberation present. If the offense involved "any conduct evidencing an intent to carry out such threat"—the highest level of deliberation—there is a six-level enhancement. At the other end of the spectrum, if the offense was a single instance with "little or no deliberation" there is a four-level reduction.

---

[3] The government notes that probation points to a third instance – the January 29, 2019 threat that "Trumps gunna die and if no one does it soon I promise I'll have his whole family killed that's a verryyyy big promise." The government agrees that the statement is part of Gonzalez's continuing conduct and escalation towards the President. To determine whether it is an additional threat under 2A6.1(b)(2), it must be a "true threat," that is, "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President." *United States v. Fuller,* 387 F.3d 643, 646 (7th Cir. 2004). The Facebook records are not clear as to whom the statement was communicated. To the extent it was posted publicly, the government agrees that a reasonable person would interpret the statement as an intent to take the life of the President.

4

Offense conduct in between, with deliberation short of conduct evidencing an intent to carry out the threat, receives no adjustment. Gonzalez falls in that middle category.

Whether there is deliberation is fact-specific. *See, e.g., United States v. Russell*, 322 Fed. Appx at 928 (collecting cases). Courts have held that the four-level reduction applies to "defendants whose threats are the product of a single impulse, or are a single thoughtless response to a particular event." *United States v. Sanders*, 41 F.3d at 484. When the threat is prompted by or in response to a recent event, there may not have been deliberation. *See, e.g., United States v. Horton*, 98 F.3d 313 (7th Cir 1996) (remanding for further consideration of deliberation for bomb threat called in the day after the Oklahoma City bombing). When not so prompted, and when the defendant takes steps to complete the threat, such as securing paper and postage, composing a letter, finding an address, and mailing the letter, the act is "not a spontaneous, momentary action done out of an opportunity or impulse." *United States v. Stevenson*, 126 F.3d 662, 665 (5th Cir. 1997). *See also United States v. Freeman*, 176 F.3d 575, 579 (1st Cir. 1999) (deliberation shown by looking up phone number, dialing, speaking to an operator, and fabricating new details for each call).

Here, the evidence shows that Gonzalez's actions were not momentary and spontaneous, rather, they involved more than a little deliberation. First, his Facebook page shows that killing President Trump had been on his mind since shortly after President Trump took office. In March 2017, Gonzalez posted to Facebook a story about a trucker who threatened the president in a 911 call, with the title "Florida trucker headed to Donald Trump with bombs arrested." R.24 (Final PSR) at ¶ 19. In December 2017 he stated, "If I didn't have nun to lose I would kill Trump my own self". *Id.* at 18. In January and February 2018, he suggested El Chapo would come for and kill trump. *Id.* On January 21, 2019, he suggested someone would get paid and "take his ass

5

out with that 30x6." On January 29, 2019, two months before the charged conduct, he stated, "Trumps gunna die and if no one does it soon I promise I'll have his whole family killed that's a verryyyy big promise." *Id.*

Thus, Gonzalez's comments range from posting about someone else wanting to kill the President, to stating he would do it if he had nothing to lose, to suggesting others may do it, to saying he was going to do it himself, to finally saying he was outside a rally ready to kill the President. Gonzalez's posted threats were not a spur of the moment, thoughtless response prompted by a particular event. They were consistent with, and an escalation of, two years of animus towards the President.

Second, the threat charged in Count 1 was tailored to the President. To put it in context, Gonzalez had made threats on Facebook previously (discussed *infra* with respect to the history and characteristics of the defendant). In particular, one threat mentioned an SKS rifle and a second threat said he was coming with "guns." R. 24 at ¶¶ 38, 45. But in the threat to which he pleaded guilty, Gonzalez chose to say he was standing outside of the President's rally with a ".22 Long Rifle." In 1981, John Hinckley Jr. waited outside of a speech given by President Reagan. When President Reagan passed by, Hinckley fired, hitting the President and three others with .22 Long Rifle bullets. *See* https://en.wikipedia.org/wiki/Attempted_assassination_of_Ronald_Reagan (last visited October 15, 2019) ("Reagan was seriously wounded by a .22 Long Rifle bullet that ricocheted off the side of the presidential limousine…").

Based on the facts, there was more than "little to no deliberation" by the defendant. Accordingly, the four-point reduction sought by the defense is inappropriate in this case and the total offense level is 17.

### III.   The 3553(a) Factors

####   A.   The nature, circumstances, and seriousness of the offense weigh in favor of a sentence at the low end of the guideline range

Facebook, the online social media platform, has a function called "Facebook Live," which enables users to "live stream" and narrate events as they happen. As the live stream is broadcast on Facebook, other users can post comments to it. Facebook Live is at the center of the defendant's charged conduct.

On the evening of March 28, 2019, President Trump held a rally in Grand Rapids, Michigan. R.32 (Final PSR) at ¶ 11. Fox 32 Chicago, a local news station with a Facebook page, posted a "Facebook Live" video stream of the rally to its Facebook page. *Id.* Visitors to the page were able to comment, and tens of thousands of comments were posted. *Id.* Most of the comments were typical political comments supporting or criticizing the President and/or his policies. *Id.*

As the President's rally in Michigan continued, and as people watched it via the Fox 32 Chicago Facebook Live stream and commented on that live stream, the defendant, Steffon Gonzalez, posted that he was "Standing outside with my .22 long rifle ready to kill trump I will be on the news". *Id.* The comment was reported to the FBI, who in turn relayed it to the United States Secret Service, the agency tasked with protecting the President. *Id.* The Secret Service was able to trace the comment back to the defendant, who first denied having Facebook, then claimed someone else used his Facebook account, and then, after being taken into custody, called his girlfriend and asked her to delete his Facebook account. *Id.* at ¶¶ 12-13, 15.

Federal search warrants were obtained for the defendant's phone and Facebook account. The phone data revealed a second threat posted during the rally by the defendant (which he later deleted): "It's so crazy how I got a big 30x6 chambered to blow his head off wait till he starts

7

walking I'm right outside we're he's at". *Id.* at ¶ 17. Thus the defendant, during a live rally hosted by the President, posted two threats to social media that he was outside with firearms planning to assassinate the President of the United States. One of those threats was seen and taken seriously enough for someone to report it to federal law enforcement. Luckily the rally-goers apparently remained oblivious to the posted threats, and no panic ensued.[4]

The guidelines provide enhancements for threats against government officials, particularly high-ranking officials such as the President of the United States. Indeed, the guidelines provide that when the threat is towards the President or Vice President, an upward departure may be warranted. U.S.S.G. § 3A1.2 n.5. The guideline recommendations, including the base offense level of 12 and a victim-related enhancement of 6, reflect the seriousness of the offense and the threat it poses to our democracy: disagreements with politics or politicians should be taken up through the political process, and not through threats of violence.

### B. The history and characteristics of the defendant support a sentence at the low-end of the guideline range

The history and characteristics of the defendant weigh in favor of the sentence recommended by the government. The defendant, though just 21 years of age, has a criminal history category of III. The convictions affording the defendant that category include juvenile convictions for intimidation and battery, and an adult conviction for conversion.

The defendant has a history of threats and intimidation. At age 15, he made a threat via Facebook to harm a victim and the victim's family with an SKS rifle after the victim criticized the defendant's grammar. R. 24 at ¶ 38. And, not accounted for in his criminal history category is a pending intimidation charge in Lake County, Indiana, with a change of plea hearing set for

---

[4] The defendant was not in Michigan for the rally. Rather, he was on pretrial home confinement in Hobart, Indiana, for a pending intimidation case in Lake County, Indiana in which he made threats to harm another person via Facebook (discussed in more detail in part III.B, *infra*). R.24 at ¶ 14.

November.  *Id.* at ¶ 45.  That charge resulted from a September 2018 incident in which the defendant used Facebook to threaten his child's mother's boyfriend with guns.  *Id.*  According to the Lake Station police report on the incident, the threats came after Gonzalez saw a picture posted to Facebook of his son with the victim.  *Id.*  The victim reported seeing pictures on Goznalez's Facebook page of Gonzalez holding handguns.  One such picture is below:



The defendant has three Facebook accounts that reflect threats, intimidation, violence, and isolation.  In one Facebook account, the banner says "Steffon Killin Mfkas Gonzalez" with a picture of an SKS rifle:



A second Facebook account has a banner that reads, "I stopped talking about how I felt because I knew no one cared."

9



A third Facebook account, used to make the threats at issue in this case, contains a photo of him with his girlfriend that says, "I'm brutally in love with you."

The defendant's Facebook accounts contain many statements of extreme and escalating animus towards President Trump, including:

- "If I didn't have nun to loose I would kill Trump my own self" (December 14, 2017);
- "FUCK DONALD TRUMP EL CHAPO GO CUT U INTO PIECES" (January 28, 2018);
- a reference to someone "get paid and reallly take his ass out with that 30x6" (January 21, 2019); and
- "Trumps gunna die and if no one does it soon I promise I'll have his whole family killedd that's a verryyyy big promise" (January 29, 2019).

The defendant also appears to have access to firearms. Not only has he posed on Facebook with firearms, but when his bedroom was searched with his consent, gun cleaning equipment and ammunition were found (though no firearm was located).

The defendant failed to graduate from high school, has limited work experience, and has previously failed to comply with court-ordered conditions of release. He was on bond at the time he committed the current offense for a similar offense. Overall, the defendant's history suggests a young man with extreme anger towards others who makes threats of violence against those who displease him. He has not learned from his prior actions and arrests, or from the relatively

lenient sentences imposed by the state. The defendant's history and characteristics weigh in favor of the sentence recommended by the government.

> **C.  A sentence at the low end of the guideline range reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence and protects the public from further crimes of the defendant**

This is not a case of an impulsive young man making exaggerated political statements to his friend on Facebook. This is a case of a young man making public and true threats to kill the President of the United States. The statements were not a mistake; at the time the defendant had once before been convicted of making a threat of violence with a gun via Facebook and had a new charge pending against him for the very same type of conduct. This defendant views threats of violence as the appropriate response to those who offend him. In this case, the threat was particularly serious because it was made publicly on a Fox news station Facebook page, was made against the President of the United States, and was made during a live public rally held by the President.

The government's recommended sentence also reflects the seriousness of the defendant's attempt to destroy evidence in his Facebook accounts relating to the threats after he was arrested, to thwart the government's investigation, and to enlist his girlfriend—who was not otherwise involved—in that effort.

A guideline sentence will serve to deter this defendant from making future threats via social media, particularly given that the more lenient treatment he has received in the state system has not achieved that result. Moreover, based on the defendant's Facebook posts and the gun cleaning equipment found in his bedroom, it appears that the defendant may have ready access to firearms. A guideline sentence protects both the President, and the general public, from the defendant and his threats of harm.

In short, a sentence at the low end of the guidelines range reflects the seriousness of the offense, provides just punishment, promotes respect for the law in the case of a defendant who continues to ignore it, will serve to deter him from making threats in the future, and protects the public in the meantime.

### D.  A sentence of 30 months is consistent with sentences meted out in similar circumstances

By the government's calculation, the low end of the guideline range is 30 months. Such a sentence is consistent with other sentences meted out for making true threats against the President. For example:

- *United States v. Hoffman*, 806 F.2d 703 (7th Cir. 1986) – the defendant, who resided in Milwaukee, sent a letter to President Regan stating "Ronnie, Listen Chump! Resign or You'll Get Your Brains Blown Out" with a crude drawing of a pistol with a bullet emerging from the barrel. The defendant was convicted at trial and sentenced to 48 months in prison.

- *United States v. Kosma,* 951 F.2d 549 (3d Cir. 1991) – the defendant sent letters to President Regan declaring him to be sentenced to death. The defendant was convicted at trial and sentenced to 21 months in prison.

- *United States v. Fuller*, 387 F.3d 643 (7th Cir. 2004) – in February 2002, the defendant, an inmate at the federal penitentiary in Terre Haute, sent a letter threatening to kill President Bush after being released from prison. At the time, he was serving a 46-month sentence for sending three threatening letters to President Clinton in 1998. The defendant pleaded guilty and was sentenced to 41 months in prison for the 2002 threats (S.D. Indiana Case 2:02-cr-36, Docket Entries 60 (plea agreement accepted) and 70 (sentence)).

- *United States v. Humphreys*, 352 F.3d 1175 (8th Cir. 2003) – In March 2001, the defendant told others on an internet chat room, by fax to the White House, and in person to three people, that he or one of his followers would kill President Bush. After conviction at trial, he was sentenced to 37 months in prison.

- *United States v. Dutcher,* 851 F.3d 757 (7th Cir. 2017) – defendant made a Facebook post and statement to a friend that he planned to kill President Obama. After a jury trial, he was sentenced to 36 months in prison.

While in many of these instances, the defendant went to trial rather than accepting responsibility as Gonzalez has done, in most instances the threats at issue were not made publicly

12

and broadly, but instead were seen by a limited number of people.  The nature of Gonzalez's threats – publicly, on Fox 32 Chicago's Facebook page, during a rally, claiming to be outside with rifles ready to shoot – are far more serious than a letter sent by U.S. Mail to the White House or a telephone call to the White House Comments line.

## IV. CONCLUSION

For the foregoing reasons, and pursuant to the plea agreement in this case, the government recommends a sentence at the low end of the guideline range.

Respectfully submitted,

THOMAS L. KIRSCH II
UNITED STATES ATTORNEY

By:   /s/ *Alexandra McTague*
      Alexandra McTague
      Assistant United States Attorney
      Northern District of Indiana